PAINTER VS UNITED STATES, ET AL.

Opinion rendered November 24, 1906.

(98 S. W. Rep. 352).

1. *Quo Warranto, Nature of Remedy—Jurisdiction.*

The statute of 9 Ann. C. 20 never having been in force in Indian Territory, the courts have only common-law jurisdiction to grant writs of quo warranto.

2. *Same—Authority to Grant.*

The writ of quo warranto to test the right of a person upon the relation of the United States attorney as such petitioner, as against the defendant to an office is not available upon such relation without leave of court having been first obtained.

Appeal from the United States Court for the Northern District of the Indian Territory; before Justice Joseph A. Gill, June 10, 1905.

Quo warranto by the United States on petition of Pliny L. Soper, by F. S. Walker, relator, against W. P. Painter. From a decree in favor of petitioner, defendant appeals. Reversed and remanded.

On January 17, 1905, the plaintiffs (appellees) filed a petition for writ of quo warranto against defendant (appellant) upon the complaint and information of F. S. Walker, relator, and alleged: That on December 17, 1904, there was held in the town of Afton, I. T., an election for two school directors for the term of three years, and for two school directors for one year, and one school director for two years. That F. S. Walker possessed all the qualifications required by law to hold

said office. That at said election F. S. Walker received **78**
legal votes for director for three years by ballot, as follows:

"Election of School Directors.

Note—Leave names of those you vote for. Scratch
out all others. Vote for five of the ten. Scratch five.
For Directors for one year. Vote for two, scratch two.

        W. C. Scott,

        W. W. England,

        J. M. Boyd,

        R. H. Harper.

For Director for two years. Vote for one, scratch one.

        J. B. Harrison,

        R. A. Abney.

For Directors for three years. Vote for two, scratch two.

        F. S. Walker,

        C. R. Randolph,

        J. J. Hubbard,

        H. L. Danforth.

        Rate of tax, 10 mills."

That, previous to said election, the citizens of Afton
had agreed that there should be but one ticket, as above stated,
but on the morning of the election another ticket was circulated,
as follows:

"School Ticket. For School Directors.

        J. K. Stephens,

        J. T. Hukill,

        C. E. Starbuck,

        W. P. Painter,

        A. Collins.

        For a School Tax of 10 mills."

That defendant claimed to have received 89 votes, but
plaintiffs allege that 60 of said votes were cast by said
last ballot, and that defendant did not receive more

than 29 legal votes. "The said last-mentioned ticket
was void upon its face in that it does not designate·
the office to which the voter desired said candidate to be elected,
and does not express any intention on the part of said voters.'"
That there were five directors to be elected, one for a two-
years term, two for one year, and two for three years; that
it is impossible from said 60 ballots cast for defendant to as-·
certain what the voters' intention was as to which of said three·
offices he desired the defendant to fill.   Two others claim
to have been elected on said ticket, and that defendant with
the others since said election have proceeded illegally to de-·
termine for themselves the length of term which they are to
respectively hold, which only the voter could legally determine,
''and the said defendant claims the right to exercise the duties
of school director for the school district and town of Afton,
I. T., for the term and period of three years, and without legal
warrant, or claim of right has used and exercised, and still
does unlawfully use and exercise, the functions of a director
of the said term of three years, in the place of the relator, F.
S. Walker, who was duly elected by the casting of 79 legal
votes for said office."   That said Walker and H. L. Danforth
were duly elected by legal ballot for the term of three years.
"The plaintiff further alleges that said defendant and those
acting with him have taken possession of the pollbooks, the
ballots and other evidences of said election and withold them
from plaintiffs.   Wherefore, the plaintiffs pray that the de-
fendant, W. W. Painter, be required to produce said pollbooks
and ballots, together with all evidences of said election, in the
court immediately for the inspection of the court and the at-
torneys representing the respective parties, and that, upon the·
hearing herein, the said defendant be declared not entitled
to said office of school director for the incorporated town of
Afton, I. T., and school director thereof, and that he must
be ousted therefrom, and that the said relator, F. S. Walker·

be declared entitled to said office and that he be installed therein to assume the duties thereof, according to law, for the term of which he was elected to serve, upon taking the oath and fulfilling of the requirements of the law in such cases made and provided and that the relator, F. S. Walker, have judgment against the defendant for costs, and for proper relief." On May 25, 1905, the defendant filed demurrer to said petition on the ground that said petition failed to state facts sufficient to constitute a cause of action, and also upon the ground that the court was without jurisdiction to issue the writ prayed for in said petition. On June 6, 1905, defendant moved the court to dismiss the petition because the same was filed without leave of court first had and obtained. On same day court overruled the demurrer and the motion to dismiss, to each of which defendant excepted. On June 10, 1905, the cause came on to be heard, whereupon defendant elected to stand upon his demurrer and refused to plead further, "and thereupon it is considered by the court that the said W. W. Painter was not elected to the office of school director in the town of Afton, I. T., at the school election held in said town on the 17th day of December, 1904, but held that the ballots upon which said defendant claimed to be elected were illegal, and did not express the intention of the voter as to what office he intended defendant to fill, and it is considered and ordered and adjudged that said defendant be absolutely excluded from holding and exercising the said office. And it is further ordered and adjudged that the relator, F. S. Walker, is entitled to said office of school director in the town of Afton for the term of three years from time of said election, and it is ordered that said defendant forthwith deliver the use, possession, and enjoyment of said office and all books, papers, and other things belonging thereto and to allow said F. S. Walker full possession thereof without let or hindrance thereto on the part of said defendant, or any other person acting through or under said

defendant, and it further adjudged that costs be and the same are hereby adjudged against defendant." After final judgment of ouster was entered, defendant filed motion for the court to fix supersedeas bond, "which said motion the court then and there on the same day overruled, for the reason as then and there stated by the court that said judgment of ouster could not be superseded; to the overruling of which said motion the defendant then and there excepted, and brings case to this court by writ of error.

*John B. Turner*, for appellant.

*P. L. Soper*, for appellee.

Townsend, J. (after stating the facts). The first error assigned is the action of the court in overruling the demurrer to the petition. It appears that, under the Constitution of Arkansas, art. 7, § 5, the power to issue the writ of quo warranto was lodged in the Supreme Court of that state, and that there is no statute of that state authorizing the granting of that writ that has been adopted and put in force in this jurisdiction by any act of Congress. While it may be contended that, under the power granted by the act of 1895, the District Courts of the Indian Territory have the same power as the District and Circuit Courts of the United States under the statutes of the United States to issue the writ, it appears that the District and Circuit Courts of the United States, under the statutes, only had the power to issue the writ in cases for removal from office of any person holding office contrary to the provisions of section 3 of the fourteenth amendment to the Constitution of the United States, and these are superseded by the removal of the disabilities by act of June 6, 1898; that, so far as any statutory authority exists for the proceeding

in this case, none can be found. And consequently, if the District Courts of the Indian Territory have any authority to issue the writ it must˜be derived from the common law. This ancient writ gradually became changed for many purposes˜into the "information in the nature of a quo warranto," and High on Extraordinary Remedies § 600, says: "It lies in all cases where the ancient writ could have been maintained, and in England and in many of the states of this country its ·scope has been enlarged and extended by legislative enactments. In the absence, however, of such legislation, its' application has been limited to ˜cases where the original writ ˜would· have been granted at common law," citing, State vs Ashley, 1 Ark. 279, 515; Commonwealth vs Murray, 11 Serg. .& R. (Pa.)˜73, 14 Am. Dec. 614.

There has been no legislation of the state of Arkansas ·touching the subject of that writ adopted in this jurisdiction, .and, if the courts of the Indian Territory have any authority, it must be by reason of the power granted in the act of 1895, placing them on a par with the District and Circuit Courts of ·the United States. The petition in this case seeks to use this ˜writ as a remedy by a private citizen to test the title of himself .and defendant to a private office. Mr. High says: "Before ·the statute of Anne the information in the nature of a quo warranto was employed exclusively as a prerogative remedy, ·to punish the usurpation upon the franchises or liberties granted .by the crown, and it was never used as a remedy for a private citizen desiring to test the title of persons ·claiming to exercise .a public franchise. And, although such informations were ·exhibited by the King's Attorney General long before this statute, yet the remedy thereby given was never enlarged beyond the limits prescribed for the original writ of quo war-ranto, which extended only to encroachments upon the royal ·prerogative. Hence the information as a means of investigating

and determining rights between parties may be said to owe its origin to the statute of Anne, which authorized the filing of the information, by leave of court, upon the relation of any person desirous of prosecuting the same, for usurping or intruding into any municipal office or franchise of the kingdom." In State vs Leatherman, 38 Ark. 87, 88, the court says: "The practice of filing informations in the nature of a quo warranto existed at common law, but it was always on the relation of the Attorney General to vindicate or protect the rights of the crown against usurpation and abuse of its franchises—never upon the relation of a private person to try his right to an office, until the statute of Anne, which made this proceeding subservient to the trial of private rights of this nature, and allowed informations by the Attorney General on the relation of individual citizens, for their benefit. The statute was never in force in this state."

It thus appears that the statute of 9 Anne, c. 20, was never in force in this jurisdiction, and that this proceeding invoked by a private relator could only be brought under that statute. Mr. High, in section 608, says: "Informations in the nature of a quo warranto as now used in England, in lieu of the ancient writ, are of two kinds: First, such as are exhibited by and in the name of the Attorney General, ex officio, without any relator, and which are filed without leave of the court and without entering into any recognizance; second, informations in the name of the queen's coroner and attorney, sometimes known as the master of the crown office, upon the relation of private citizens. The latter class may be filed only by leave of court, first obtained for that purpose, as provided by the statute of Anne." If then, under the common law, informations in the nature of a quo warranto were only permitted to be filed by the Attorney General, ex officio, and without a relator and without leave of court and only to "vin-

dicate and protect the rights of the crown·against usurpation and abuse of its franchises and never upon the relation of a private person to try the right to an office," then the demurrer should have been sustained. If this petition could be filed at all, which, from the foregoing authorities, could only have been under the statute of 9 Anne, c. 20, not in force in this jurisdiction, then it could only be filed by leave of the court. Mr. High says, in section 605: "In England the former practice of the Court of King's Bench seems to have been to grant informations in the nature of a quo warranto as a matter of course.      *      *      *      Gradually, however, the King's Bench became more cautious in granting leave to file the in-- formation, and would only do so after considering all the circumstances of the case. And the principle is now firmly established that the granting or withholding leave to file an information, at the instance of a private relator, to test the right to an office or franchise rests in the sound discretion of the court to which the application is made.      *      *      *      In the exercise of this discretion, upon the application of a private relator, it is proper·for the court to take into· consideration the necessity or policy of·allowing the proceeding.      *      *      * And, whenever it is apparent that the filing of the information would result in no practical benefit,      *      *      *      and the term will expire before a trial can be had,      *      *      * the court may properly refuse the application for leave to file an information.      *      *      *      So when the relief is sought upon the ground of an informality in the election of respondent to the office in question, but the relator himself participated in the election without objection, the court, in the exercise of its discretion, may properly refuse the filing of an information." And in 23 Am. & Eng. Enc. Law, p. 603, it is said: "The necessity of prior leave of court under modern statutory regulations and forms of proceeding depends, of course, upon the terms of the statute in force. But the general

rule seems to be substantially the same as at common law, after the statute of Anne; that is to say, proceedings by the Attorney General, ex officio, in behalf of the public, may be brought without leave of court, while proceedings at the instance of a private person to· try the right as between party and party cannot be prosecuted without leave of court." "The applicant must make some affirmative showing why leave should be · granted and respondent may be heard by counter affidavit." 23 Am. & Eng. Enc. of Law (2d Ed.) p. 604, and cases cited in note.   In 17 Enc. of Pl. & Pr. pp. 444, 445, 450 and 454, the proper practice is stated to be: "At common law the Attorney General had the right, ex officio, to sue out a writ of quo warranto or to bring an information in the nature of a quo warranto on behalf of the sovereign without leave of court, it being a writ of right for the sovereign.   At an early day informations upon private relation were required by statute to be brought with leave of court, and while formerly the granting of leave to file informations in the nature of quo warranto was a matter of course, an application for the writ, where this is the practice, or for leave to file the information, is now to be granted only in the sound discretion of the court or judge to whom the application is made, and will not be granted as a matter of right even though the title in question may be defective, but the court should exercise a sound discretion in accordance with the principles of law and the circumstances of each particular case, but, on the other hand, the court is not at liberty to arbitrarily refuse the leave.   In the absence of any peculiar statutory practice, when the court has discretion to permit the issuance of a writ of quo warranto, or the filing of an information in the nature thereof, the usual practice is to make application, supported by affidavit, for such leave and for a rule nisi to the defendant to show cause why such rule should not be granted.   The respondents to a rule to show cause in

quo warranto proceedings may meet the rule by counter affidavits, which are properly taken into consideration by the court in determining its action."

If it be insisted that these proceedings should be a civil action under the Code, the appellant cites the following: In Capital City Water Co. vs State ex rel. McDonald (Ala.) 18 South. 66, 29 L. R. A. 745, in commenting on a statute similar to Mansfield's Digest § 4915 (Ind. Ter. Ann. St. 1899, § 3120) the court say: "The sole purpose of the statute at first, all along, and now, was and has been and is to substitute a summons and complaint for the common-law writ and declaration, and not to require proceedings, which at common law were prosecuted by information or petition and the like such as mandamus, prohibition, certiorari, supersedeas, habeas corpus, etc., to be commenced by service of summons and complaint. * * * Moreover, quo warranto is not a civil proceeding at the common law, but criminal in its nature, involving severe pains and penalties, and now that it is shorn of these consequences, it still cannot be said to be a civil action." Again in State ex rel. Clapp vs Minn. Thresher Co. (Minn.) 41 N. W. 1021, 3 L. R. A. 515, the court says: "It must therefore be considered as settled that the 'remedial cases' of which the Legislature may give this court original jurisdiction includes all those special or extraordinary proceedings under which are usually called original remedial writs, such as habeas corpus, mandamus, prohibition, quo warranto, and the like, of which the Constitution of most states (including the state of Arkansas, art. 7, § 4) * * * gave original jurisdiction to the highest Appellate Court."

As the third assignment is now regarded as simply academic by the appellant, and relates to the supersedeas upon a judgment of ouster, we will not examine the questions pre-

sented, but, from the authorities heretofore cited, we are of the opinion that this case should be reversed, and it is so ordered.

Reversed and remanded.

CLAYTON and LAWRENCE, JJ., concur.