## JOHN McAULEY *et al.*

*v.*

## COLUMBUS, CHICAGO AND INDIANA CENTRAL RY. CO.

1. RAILROADS—*right to condemn property.* It matters not whether certain railway companies were empowered by their charters to construct a railroad within the city of Chicago, if, after their consolidation, the legislature, by an amendatory act, recognizes the existence of the consolidated company and the name adopted, and its authority so to construct its road, as this will confer the power.

2. SAME—*act construed as giving power to construct road in a city.* A provision of an act amendatory of the charter of a railway company, that the rate of speed at which its trains, etc., may be run in the city, shall be under the control of the common council, is a legislative recognition of its right to construct its road within the city limits.

3. EMINENT DOMAIN—*corporation de facto may exercise the right.* In a proceeding by a railway company to condemn land for the use of its road, it is sufficient that it is, *de facto,* a corporate body.

4. CONDEMNATION—*trial of other issues on assessment by jury.* After the introduction of evidence on an assessment of damages for property sought to be condemned, the court, on motion of certain tenants of one of the land owners, swore the jury to try the issues presented by their pleas questioning the right to condemn. The proof of these issues was nothing more than what the land owners insisted upon, and this working them no prejudice, was *held* no error as to them.

5. SAME—*instruction as to time of fixing value of property, when immaterial.* Where the witnesses on both sides, in a proceeding to condemn property, testified as to its value at the date of the institution of the proceeding, except three, and from their testimony it did not appear that the property was worth more at the time of the trial, it was *held*, that a modification of an instruction confining the jury to its value at the first date, was not of sufficient importance to affect the rights of the land owner.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Mr. JAMES H. KNOWLTON, and Mr. GEO. GARDNER, for the plaintiff in error.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was a proceeding instituted by The Columbus, Chicago and Indiana Central Railway Company, for the condemnation of private property for the use of its railroad.

The petition filed July 13, 1872, sets forth that the petitioner is a corporation duly organized under and by virtue of a special charter granted by the legislature of Illinois, and under the public laws of said State, with full authority to construct a railroad from a point on the line dividing the State of Indiana from the State of Illinois, in the county of Cook, in the latter State, thence upon the most eligible route to the city of Chicago, in said county, being a part of a general line extending from the city of Cincinnati to the city of Chicago; that it had constructed its road from said point to the city of Chicago, and now sought to construct its road within said city, as authorized by its charter, in order to which, the occupancy and use of certain described lots in the city of Chicago were necessary, and that petitioner had not been able to obtain the same

by purchase, etc. Compensation for the taking of the property was assessed by a jury, and the land owners bring this writ of error.

The main objection which is urged against the proceeding is, that the petitioner was not a corporation, and had not authority to construct a railroad in the city of Chicago over the lands in question.

In support of its right to take the proceeding, the petitioner in the court below exhibited in evidence "An act to incorporate the Galena and Illinois River Railroad Company," approved February 18, 1857, Private Laws, 1857, page 1400, empowering that company to construct a railroad from Galena, in JoDaviess county, to a point to be thereafter located, in township No. 35 east, of range No. 13, principal meridian, upon the most eligible route between the points above named, and authorizing it to consolidate its road with any other railroad within this or any other State, which might cross or intersect the same, or be built along the line thereof.

There was also offered in evidence what purported to be articles of consolidation between the "Chicago and Great Eastern Railway Company," a corporation duly organized and existing under the laws of the State of Indiana, and the "Galena and Illinois River Railroad Company," entered into October 30, 1863; also, articles of consolidation between the Great Eastern Railway Company and the Chicago Air-Line Railroad Company, dated January 25, 1865; also, articles of consolidation between the Chicago and Great Eastern Railway Company and the Chicago and Cincinnati Railroad Company, dated January 25, 1865; also, articles of consolidation between the Columbus, Chicago and Indiana Central Railway Company and the Chicago and Great Eastern Railway Company, dated December 4, 1867; and an act of the General Assembly of this State, approved February 16, 1865, entitled "An act to amend the charter of the Chicago and Great Eastern Railway Company," Private Laws, 1865, vol. 2, p. 147.

This was all the evidence introduced to show the right of the petitioner to construct the railroad at the locality in ques-

tion, and it is alleged to be insufficient for the purpose, because all these railway companies appeared on the face of the respective articles of consolidation to be railway corporations of other States than Illinois, except the Galena and Illinois River Railroad Company; that the incorporating act of that company granted no authority to construct a railroad further east than the east line of range 13 east, of the third principal meridian, whereas, in the articles of consolidation between that company and the Great Eastern Railway Company, it is recited that the companies have a common terminus on the line dividing the States of Illinois and Indiana, which had been fixed by the companies at a point on said line at or near the north-east corner of section 20, in township 35 north, of range 15 east, of the third principal meridian, which, it is claimed, is at least seven miles further east than was provided for this terminus by the incorporating act. And, further, that under the general consolidation act of this State, at that time, the company could not enter into a contract of consolidation with a foreign railway corporation until its point of terminus on the State line had been fixed by the legislature of this State, which had never been done.

The eastern terminus of the Galena and Illinois River railroad, as fixed by the charter of the company, was "a point to be hereafter located in township No. 35 east, of range No. 13, principal meridian." This is not very definite, and in the recital in the articles of consolidation between the Galena and Illinois River Railway Company and the Chicago and Great Eastern Railway Company, after naming the point of terminus fixed by the companies, the added statement, "said point, considered with reference to the survey of lands in Illinois, being in township 35 north, and east of range No. 13," was literally correct, and brought the terminus so fixed within the words, at least, of the charter of the former named company. But, however this may be, we are of opinion that all the objections on this score are sufficiently obviated by the act of our legislature, entitled "An act to amend the charter of the Chicago and Great Eastern Railway Company," approved February 16,

1865.    In addition to other amendments made by this act, the third section of the act provides " that the rate of speed at which the trains and locomotives of the Chicago and Great Eastern Railway Company may be run within the limits of the city of Chicago, shall be under the control of the common council," etc.

· The Galena and Illinois River Railroad Company had previously, viz: October 30, 1863, become consolidated with the Chicago and Great Eastern Railway Company, an Indiana corporation, pursuant to a provision in its charter authorizing it to consolidate with any other railroad, " within this or any other State, which might cross or intersect the same, or be built along the line thereof," the articles of consolidation providing that the name of the consolidated company should be the Chicago and Great Eastern Railway Company.

This amendatory act is a legislative recognition of the existence of this consolidated company, and of the name of the consolidated company adopted by the articles of consolidation, amounting to a legislative ratification of the consolidation which had been effected; and it is also a like recognition of the right of the company to construct a railroad within the city of Chicago.

It is sufficient for the purpose of this proceeding, that the petitioner is a body corporate, *de facto.* This we deem sufficiently appears, as also the authority to take the present proceeding.

After the jury had been impanelled, and sworn to ascertain and report the compensation, and the principal part of the testimony introduced, certain tenants of Lawrence, one of the plaintiffs in error, requested the court, before they introduced any evidence, to have the jury sworn to try the issues which had been joined on two pleas filed by said tenants, to which objection was made by McAuley and Lawrence, the owners of the premises; but the court granted the request, and the jury were so sworn.    This ruling of the court is assigned as error.

The issues referred to were upon pleas of the tenants of the non-existence of the corporation, and its want of right to com-

mence or prosecute the petition. The proof of these issues was nothing more than the proof which plaintiffs in error insist the petitioner was required to make upon the inquiry as to compensation alone. The proof adduced upon these issues was only the documentary evidence before named, as introduced in evidence. We do not perceive wherein any prejudice resulted to the plaintiffs in error, or they have any just ground of complaint on account of the ruling of the court.

Objection is taken by plaintiffs in error to the following modification by the court of an instruction given on behalf of the petitioner, viz: "the value of the property taken to be ascertained as of the date of July 13, 1872," the time of filing the petition. The trial took place October 25, 1872, and plaintiffs in error say they were entitled to the value at the time of the trial.

This bare objection is raised by plaintiffs in error without any argument or the citation of any authority in its support. We have not been favored with any argument whatever in the case, on the part of defendant in error. The witnesses on both sides appear to have been examined without objection as to the value of the property on July 13, 1872. All the testimony that we discover in the record, upon the point of any difference in value of the property at the time of the filing of the petition and that of the trial, is that of three witnesses, one of whom testified, merely, that he thought property there, where this is situated, was then, at the time of the trial, worth a little more than it was on the 13th of July, 1872, and the other two only testified that they did not know of any difference between the value at those respective times. In view of the evidence, the modification of the instruction was without important bearing upon the rights of the defendants. We do not feel called upon to determine the question raised, under the circumstances of its presentation, and decline to do so.

The judgment is affirmed.

*Judgment affirmed.*