The People, ex rel. William Schaumleffel, Plaintiff in Error, v. Illinois Central Railroad Company, Defendant in Error.

1. MANDAMUS—*when evidence not competent in proceeding to compel furnishing of adequate train service.* In an action to compel a railroad company to furnish adequate train service, it is not competent to show that the relators and others feared that if a mine were opened at the place in question, sufficient train service would not be afforded and that damage would result.

2. RAILROADS—*who cannot question manner of exercise of franchise.* The propriety of the manner in which a railroad company is exercising its franchise is a question which can only be raised by the state. Any question of illegal combination or arrangement that might affect the franchise of such a company can only be raised by The People in a proceeding instituted for that purpose.

*Mandamus.* Error to the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1908. Affirmed. Opinion filed September 12, 1908.

H. E. SCHAUMLEFFEL, for plaintiff in error.

KRAMER, KRAMER & CAMPBELL, for defendant in error; JOHN G. DRENNAN, of counsel.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

The purpose of this suit, the grounds of the relief sought and the nature of the defense interposed, are so fully set forth in the pleadings of the respective parties, that we shall refer to them here with some particularity.

A petition for *mandamus* was filed by plaintiff in error in the Circuit Court of St. Clair county, alleging that the St. Louis, Alton and Terre Haute Railroad Company is a corporation organized under a special charter granted it by the general assembly of this state; that for many years prior to the year 1898 it operated a railroad between East St. Louis and Belleville

in said county, running passenger and freight trains both ways between said points; that it established and kept on said railroad a station called Ogle station, where passengers are received and discharged by all regular trains; that about the year 1896 said company entered into an agreement with the defendant, the Illinois Central Railroad Company, by means of which the control and operation of said railroad passed to the defendant; that about the year 1898 defendant ceased to run trains over said railroad from East St. Louis to Belleville, for the carriage of either passengers or freight, and that the service to the public upon said railroad is only in one direction; that said Ogle station is still maintained for the purpose of receiving and discharging passengers to and from trains operated in one direction only, that is from the city of Belleville to East St. Louis; that the relator is and has been for many years the owner of a large tract of land lying near said station and through which said railroad runs, and that his residence is within a hundred yards of said station; that if the trains on said railroads ran both ways, he and several hundred other residents of said station, would have occasion to frequently travel on said road, but that as the railroad is now run they are largely deprived of the use and accommodation of the same; that the land owned by the relator has underlying it, a vast quantity of coal which if raised to the surface of the ground would be worth a large sum of money; that by the failure of defendant to run its trains towards the city of Belleville, loaded cars are not drawn in that direction and the shipping of coal in that direction is thereby greatly hindered; that because of the failure of defendant to run empty coal cars from the city of East St. Louis and to haul loaded cars towards the city of Belleville, the business of opening and operating a coal mine on said tract of land is hindered and the value of the coal to relator practically destroyed; that a coal mine on said tract would be of vast interest to the general public as well as the relator;

that unless defendant is compelled by *mandamus* to do otherwise, it will continue to operate its railroad in the manner aforesaid and to fail in its duty towards the public and the relator.   A writ of *mandamus* is therefore prayed for, commanding defendant to operate said railroad by regular and proper trains both passenger and freight and return empty cars over said line of railroad from the city of East St. Louis to the city of Belleville in said county, as well as from the city of Belleville to the city of East St. Louis and to stop its passenger trains to receive and discharge passengers at said Ogle station.

The answer of defendant states that it acquired control of the St. Louis, Alton and Terre Haute Railroad about the year 1895, since which time said road has been operated by the defendant; it admits that since the road passed into the control of the defendant passengers and freight have been transported in one direction only as alleged in the petition.   But it denies that the petitioner or the people of the State of Illinois are injured or otherwise prejudiced by reason of that fact or that petitioner is entitled to the relief prayed.

Defendant further says that about May 23, 1896, it entered into a contract with the St. Louis, Belleville and Southern Railway Company, a corporation operating a railroad running from said city of East St. Louis to said city of Belleville, whereby defendant acquired the right to run its trains over the tracks of said railway company and from that date has operated its passenger and freight trains from the city of East St. Louis to the city of Belleville, over the tracks of said company; that the city of Belleville is about fourteen miles from the city of East St. Louis; that from the city of East St. Louis to the station of Church, a point about midway between said cities, said railroad lines run parallel, at no place between said points being more than 300 feet apart; that at said station there is an agency maintained for the accommodation of the patrons of both of said railways; that about one-half mile east of

said station, there are high bluffs over which it is necessary to pass in going from East St. Louis to Belleville and over which it is difficult to construct railroad lines with suitable grades; that after it acquired the use of the line of the St. Louis, Alton and Terre Haute Railroad Company, it spent a large amount of money for labor and material and improvement of said line, so that its trains might be operated with safety to passengers, freight and employes; that after said improvement had been made defendant learned that said line between the station of Church and the city of Belleville could not be constructed so that a suitable grade could be had for the movement of passengers and freight over said line in both directions; that defendant was wholly unable to meet the wants and demands of the public and discharge its duties as a common carrier, and it became necessary for defendant to enter into the contract with the St. Louis, Belleville and Southern Railway Company above mentioned, so that it could meet the wants and demands of the public and discharge its duties and obligations as a common carrier and move passengers safely and expeditiously between the cities of East St. Louis and Belleville; that it expended a large amount of money in improving the line of said railway company last mentioned, and thereby a suitable grade was acquired for the same between the stations of Church and Belleville over and along which trains could be moved with safety to passengers, freight and employes; that at the time it entered into the contract last mentioned, and since, it has been necessary for defendant to operate a double line of railway tracks between the cities of East St. Louis and Belleville, without which the wants and demands of the public could not have been met with safety; that since said lines have been improved, freight and passengers can be safely and expeditiously carried from the city of Belleville to the city of East St. Louis over the line of said St. Louis, Alton and Terre Haute

Railroad Company and from the city of East St. Louis to the city of Belleville over the line of said St. Louis, Belleville and Southern Railway Company; that said lines of railway from the station of Church to said city of Belleville, run as nearly parallel as it is practicable for them to be; that the station of Ogle on the line of St. Louis, Alton and Terre Haute Railroad Company, is about three miles in a southeasterly direction from said station of Church and is only a flag station, no agency being maintained there and that there is a similar station maintained on the line of the St. Louis, Belleville and Southern Railway Company, about three-fourths of a mile directly south of said station of Ogle on the other line; that the relator and people living in the neighborhood of said stations are provided with ample railroad facilities and are not deprived of any right or convenience by reason of the manner in which the trains are operated on said railroad lines; that the wants and demands of the relator and the people living in the vicinity of Ogle, do not demand that a station be maintained thereat, and that trains be operated in both directions on said line of railway formerly owned by said St. Louis, Alton and Terre Haute Railroad Company; that if the relator has any cause of complaint it accrued more than five years prior to the commencement of this action and is barred by the Statute of Limitations; that this action was commenced without notice of any kind to defendant; that there was no complaint concerning the matters and things above mentioned. There was also a special plea of the Statute of Limitations filed by the defendant.

The petitioner filed a replication denying the material allegations contained in defendant's answer, and further replying as to so much of said answer, as sets up the use and operation of said St. Louis, Belleville and Southern Railway by the defendant, as a double track, said he should not thereby be precluded because said railway was, when defendant commenced to use and

operate it, a parallel and competing line of railway with the line of railway then and there operated and controlled by defendant between the cities of East St. Louis and Belleville and was engaged in general business between said points in opposition to and in competition with the railroad of defendant, and that since defendant entered into said contract with said railway company, it has destroyed all competition between said railways.

There was a trial by jury, a verdict in favor of the defendant and a judgment against the petitioner, to review which this cause has been brought here by writ of error.

Plaintiff in error asserts that the verdict is contrary to the evidence, that it is, contrary to the law because founded on an immaterial issue and that the court erred in excluding proper evidence, admitting improper evidence and giving improper instructions.

There was little controversy regarding the material points in the evidence and it is sufficient to say that defendant in error produced abundant evidence to sustain the allegations in its answer.

The point made by plaintiff in error that the verdict is contrary to the law, is based upon the theory that a railroad company when it has once established its route cannot relocate it. We are of opinion that this question is not raised by the pleadings or proofs in this case. It is not asserted or proven that either of the two lines in question have been changed from their original location although it is shown that they have been materially improved in the matter of grade and otherwise.

The complaint made by plaintiff in error in his petition is that the defendant in error is not properly operating that part of its line formerly known as the St. Louis, Alton and Terre Haute Railroad, for the carriage of passengers and freight between East St. Louis and Belleville, and that proper and sufficient railroad service is not given to him or to the public generally,

especially that portion of the public living near Ogle station. As the question above mentioned is not presented by the record in this case therefore it is not necessary, nor are we at liberty, to discuss it.

Upon the trial of the case, the plaintiff offered evidence to show the extent of his coal interest and the adaptability of his land for a coal mine; that the royalties from mines which could be located on his land would be worth a large amount of money, and the fact that the trains did not run both ways kept people intending to invest in mines there from doing so. But this evidence was, on motion of defendant in error, excluded by the court. This evidence was properly excluded as it was based merely on conjecture of possible injury to the relator under certain contingencies. Had there been a mine in operation upon the relator's lands or in that locality, and evidence was offered to show that the manner of operating the trains interfered with the conduct of the mine or the shipping of the product, such evidence would have been proper. But evidence that the relator or others feared if a mine was opened it would not have sufficient railroad service, was not proper.

Plaintiff in error also offered to show the St. Louis, Belleville and Southern line was a competing and parallel road with the St. Louis, Alton and Terre Haute line, before defendant in error operated trains on it, and that since then it had ceased to be a competing line and that the trackage contract introduced by defendant in error did not cover the true relations between it and the St. Louis, Belleville and Southern Railway Company, but upon objection being made the court refused to admit the evidence.

The question sought to be investigated by the proposed evidence might be raised in a direct proceeding instituted by the state for that purpose, but cannot be raised in a collateral proceeding like this. This question has been passed upon by the Supreme Court in the case of Thomas v. St. Louis, Belleville and South-

ern Railway Company, 164 Ill. 634, where it is said: "The defendants then offered to prove that the railway of petitioner was a parallel line to the Cairo Short Line Railroad (St. Louis, Alton and Terre Haute Railroad), from East St. Louis to Belleville, and that both lines were operated by the Illinois Central Railroad Company. There was no offer to show the franchise of petitioner had been forfeited and the court refused to admit the offered evidence. It was sufficient for the purpose of the proceeding that the petitioner was a body corporate *de facto*. (McAuley v. Columbus, Chicago and Indiana Central Railway Co., 83 Ill. 348). While it retained its franchise, the question of whether or not it was improperly exercising such franchise, was one between it and the state. Any question of illegal combination or arrangement entered into by it that might affect the franchise, could only be raised by the people in a proceeding instituted for that purpose."

It is next urged by plaintiff in error that the court admitted improper evidence on the part of defendant in error. The evidence complained of was introduced to show that Ogle station and intervening territory was included by defendant in error within the switch limits, and that such territory was given the same service as was given industries located in Belleville at some distance from the depot, and that the service so given was ample. The objection to this evidence was properly overruled as it was pertinent to the charge in the petition, that the relator and the public in the vicinity of Ogle station on the St. Louis, Alton and Terre Haute Railroad were largely deprived of the use and accommodation of said railroad, and that defendant in error was failing in its duty to the public in that regard.

But two instructions were given on behalf of defendant in error, both of which plaintiff in error asserts were erroneous. The first instructed the jury that the maintenance of a proper station at Ogle was not involved in the suit. The complaint made by plaintiff in error

to this instruction was that there was no evidence concerning what was a "proper station" and the instruction had a tendency to lead the jury to believe as a matter of law, plaintiff in error and others had no possible interest at said station. It is admitted by both parties that there were stations at Ogle on both lines of road and while the instruction was not necessary, yet it was not erroneous for the court to tell the jury what was the fact, that the question of the maintenance of a proper station was not involved.

The second instruction was as follows:

"The court instructs the jury that if you believe from a preponderance of the evidence that the relator William Schaumleffel and the public living near the station at Ogle are given reasonably good service by the defendant in the operation of its trains as shown by the evidence in this case, then you should find the issues in this case in favor of the defendant."

The first objection raised to this instruction is that it tells the jury what the evidence shows and infers that it shows reasonable service. We do not think this instruction is reasonably subject to the objection made. The words "as shown by the evidence in this case" must manifestly be taken in connection with and as limiting the words immediately preceding them relating to the operation of trains, and evidently refers to the manner of the operation of the trains "as shown by the evidence." The manner of operating the trains was in fact shown by the evidence on both sides and concerning it there was no controversy. Another objection made is that this instruction tells the jury defendant in error might re-locate its lines. It does not appear to us that the instruction is subject to this criticism, but it plainly bears directly upon one of the questions raised by plaintiff in error in his petition.

Complaint is also made that the court submitted to the jury a special interrogatory asking a finding upon the question whether the evidence in the case showed that a double track was necessary for the transaction of the business of defendant in error, between the cities of

East St. Louis and Belleville, which the jury answered in the affirmative. This question was pertinent to one important phase of the controversy being investigated, and it appears to us unobjectionable.

We find no reversible error in the record and the judgment of the court below is accordingly affirmed.

*Affirmed.*