2009 OK 90

The STATE of Oklahoma ex rel. BOARD OF REGENTS FOR the OKLAHOMA AGRICULTURAL AND MECHANICAL COLLEGES, Plaintiff/Appellee

v.

McCLOSKEY BROTHERS, INC. an Oklahoma Corporation; Defendant/Appellant,

Bank of Nichols Hills and County Treasurer of Payne County, State of Oklahoma.

No. 105,228.

Supreme Court of Oklahoma.

Dec. 8, 2009.

Randall Elliott, Pryor, OK, Barry Kent Roberts, Norman, OK, for Plaintiff/Appellee.

Harlan Gene Hentges, Edmond, OK, for Defendant/Appellant.

KAUGER, J.

¶ 1 This cause concerns an eminent domain proceeding brought by the Board of Regents for the Oklahoma Agricultural Colleges (appellee/Regents), against the McCloskey Brothers, Inc. (appellant/the landowner/McCloskey Brothers). The dispositive issues presented on certiorari [1] are whether: 1) the Court is precluded from addressing a standing issue because the landowner did not appeal an interlocutory order of the trial court; 2) the landowner may challenge the legitimacy of the taking by alleging that the Regents were not comprised of a majority of farmers in compliance with the Oklahoma Constitution art. 6, § 31A; [2] 3) the taking of

---

1. We consolidated the issues into four. A fifth issue raised by the landowner is whether the commissioners improperly followed the trial court's instructions, resulting in an over-valuation of the landowner's property by approximately $20,000.00. Because the question of whether the commissioners' report exceeded the scope of the trial court's instructions was not raised in the landowner's exception to the commissioners' report, the Court of Civil Appeals refused to address it. However, the record reflects that after the exceptions were filed, it became apparent that the commissioners may have included values such as lost profit and lost rent based, at least in part, on additions to the property which were never made. While it appears that the property value may have been overstated in the commissioners' report by about $20,000.00, we need not address the issue today. Both parties have demanded a jury trial on the issue of the value of property. The jury will have to determine the true value of the property, considering its condi-

tion at the time of the taking, rendering moot the decision of whether the instructions were followed, resulting in an inappropriate over-valuation. The issue will ultimately be resolved when the jury determines the true value of the property.

2. The Oklahoma Constitution art. 6, § 31A provides in pertinent part

There is hereby created a Board of Regents for the Oklahoma Agricultural and Mechanical College and all Agricultural and Mechanical Schools and Colleges maintained in whole or in part by the State. The Board shall consist of nine (9) members, eight (8) members to be appointed by the Governor by and with the advice and consent of the Senate, a majority of whom shall be farmers, and the ninth member shall be the President of the State Board of Agriculture. Any vacancy occurring among the appointed members shall be filled by appointment of the Governor by and with the

land for an athletic village was for a public purpose; and 4) the Regents negotiated in good faith.

¶ 2 We hold that: 1) the landowner's decision not to appeal the interlocutory order regarding standing is not preclusive; 2) the landowner has standing to dispute the taking, but such standing does not include the ability to challenge the composition of the Board of Regents. This right is reserved to *quo warranto* proceedings initiated by the State. Regardless, the Regents' actions were valid because they were *de facto* Regents approved by the Governor and confirmed by the Senate. We further hold that: 1) the taking of land for an athletic village was for a valid public purpose; and 2) the Regents acted in good faith.

## FACTS

¶ 3 On September 13, 2005, the appellant, the McCloskey Brothers, a corporation owned by brothers Keven and Joel McCloskey, purchased a small rental house located approximately one half of a block away from the north and east side of the Oklahoma State University (the University) campus in Stillwater, Oklahoma.[3] The property was previously owned by a Nevada resident, and according to Kevin McCloskey, they paid either $25,000.00 or $25,500.00 for the proper-

ty, which their bank had appraised for $30,000.00.[4]

¶ 4 At about the same time that the landowner acquired the property, information began circulating in the community that the University was interested in a large area on the east side of campus and across the street north, to create what it had labeled an "athletic village." The proposed village area was located directly north of the current football stadium where the University planned to build athletic training fields, indoor and outdoor training facilities, and a parking garage. By December 2005, the University, through its Foundation and an acquisition agent, had already begun acquiring properties from property owners. In a letter dated December 23, 2005, the University's Foundation offered to purchase the property from the McCloskey Brothers for $50,000.00,[5] or twice the amount the company had paid for the property three months earlier.

¶ 5 The McCloskey Brothers, in a letter dated May 6, 2006, responded to the December 23, 2005, letter, rejected the offer, and suggested that the property was really worth closer to $103,120.98.[6] The University refused this offer, and at some point in the process, the landowner presented a figure of $89,819.00, which was also declined by the University. Discussions continued between the landowner and the University until July

advice and consent of the Senate. The members of the Board shall be removable only for cause as provided by law for the removal of officers not subject to impeachment. . . .
This section was added to the Constitution by State Question No. 310, Ref. Petition No. 87, in 1944. Prior to this amendment, § 31 provided for the Board of Agriculture to serve as the Regents for all of the State's Agricultural and Mechanical Colleges.

3. The house, which was intended to be used as a rental house, was located on a small, rectangle-shaped lot measuring approximately 60 feet long by 50 feet wide for a total of 3000 square feet. The tiny home was built in 1940, and it consisted of two bedrooms and one bathroom with approximately 644 square feet of living space and an attached single car garage. At various points in the record, the parties refer to the property as having 631 square feet. According to the plaintiff's exhibit # 3 for the hearing of July 23, 2007, an appraisal report dated November 16, 2005, the appraisal reported a square footage of approximately 644 square feet. While the appraisal lists the house as being in average condition,

the pictures taken in October of 2006, reflect that, at least by that time, "average" may have been an exaggeration. The landowner also discussed, at some point, converting the garage into another bedroom to increase the square footage to between 800 and 900 square feet. This conversion never came to fruition.

4. Trial transcript, July 23, 2007, p. 55, lines 8 and 12.

5. The $50,000.00 offer was based on the November 16, 2005, appraisal report of a real estate appraiser out of Jenks, Oklahoma.

6. The Brothers' figure was at least partially arrived at by presuming the house would be remodeled in the future and the square footage would then increase. The landowner also expressed feelings of being: 1) betrayed by the University for the process in which it had acquired land; and 2) threatened by the University's and the acquisition agent's intimation that eminent domain would be used in the event negotiations could not be mutually agreed upon.

5, 2006. At this juncture, the University offered the landowner $62,000.00 for the property, which the landowner again rejected.

¶ 6 Finally, on July 28, 2006, the appellee, the Regents for the University, passed a resolution recognizing that negotiations with the landowner had failed and that the property should be acquired through eminent domain proceedings.[7] On August 16, 2006, the University, acting through its Regents, filed a petition for condemnation of the landowner's property under the provisions of 66 O.S. 2001 § 57[8], 70 O.S. 2001 § 3401,[9] and 70 O.S. Supp. 2005 § 3412.[10]

¶ 7 On September 15, 2006, the trial court appointed three commissioners and issued instructions for determining the fair market value of the property. The commissioners filed their report on October 10, 2006, valuing the property at $84,000.00. On November 8, 2006, the landowner filed its exception to the commissioners' report arguing that: 1) the Regents could not legally exercise the power of eminent domain because a majority of the Regents were not farmers as required by the Oklahoma Constitution;[11] 2) the Regents had no authority to exercise the power of eminent domain; 3) the Regents did not legally adopt the resolution of necessity; 4) the proposed use of the property was not a public use or public purpose; and 5) the Regents did not make a good faith effort to purchase the property.[12] On December 7,

---

7. Of the 89 properties acquired for the athletic village, this one piece of real property was the lone hold-out for which the University had to resort to eminent domain.

8. Title 66 O.S. 2001 § 57 provides in pertinent part:

The provisions of this article with reference to eminent domain shall apply to all corporations having the right to eminent domain, and shall apply to the State of Oklahoma and its various educational, reformatory, penal and eleemosynary institutions, including departments of state having the power to purchase real property for public purposes, and such institutions and departments shall have the right under this article to acquire fee simple title to the property taken....

See also 27 O.S. 2001 § 5, which governs school districts and board of education.

9. Title 70 O.S. 2001 § 3401 provides:

The state educational institution located at Stillwater, previously known as the Oklahoma Agricultural and Mechanical College and now known as Oklahoma State University of Agriculture and Applied Science, shall continue at the same location and its official name shall be Oklahoma State University. The Legislature further recognizes and confirms that said institution is an institution corporate under the Constitution and laws of Oklahoma with full power and authority, acting through its said constitutional Board of Regents, to do all things necessary or convenient to accomplish the corporate objects of said institution, and said institution, acting through its said constitutional Board of Regents, is hereby recognized to be such public corporation and to have such powers, acting through its regents.

10. Title 70 O.S. Supp. 2005 § 3412 provides in pertinent part:

The Board of Regents for the Oklahoma Agricultural and Mechanical Colleges shall have the supervision, management and control of Oklahoma State University, Panhandle State University, Langston University, Connors State College, and Northeastern Oklahoma Agricultural and Mechanical College; and shall have the following additional powers and duties: ... 6. Accept gifts of real and personal property, money and other things, and use or dispose of the same in accordance with the directions of the donors or grantors thereof; ...
8. Acquire and take title to real and personal property in its name, on behalf of any of the institutions under its jurisdiction, and convey, exchange or dispose of, or otherwise manage or control, such property in the interest of such institutions, including the granting of leases, permits, easements and licenses over or upon any such real property. The Board shall have the power to institute any legal action in the name of the Board before any court having jurisdiction of such actions. The Board shall have the custody and control of abstracts of title and instruments affecting the ownership of or title to real property belonging to the Board, and being held by the Board on behalf of a particular state educational institution ...

11. The landowners argue that eight of the nine regents must be farmers. However, the Oklahoma Constitution, art. 6, § 31 A, see note 2, supra, only requires a majority of the eight be farmers. A majority is more than half.

12. The landowner also re-asserts that its civil rights have been violated. The Regents argue that no civil rights violation occurred, nor could such a claim be asserted in this proceeding. Regardless of whether such a claim could be brought in a condemnation proceeding the basis of the argument is that because the Regents were not legally constituted, any taking of real property would be a violation of civil rights. Our

2006, the Regents demanded a jury trial on the amount of the commissioners' award and the next day, the landowner also demanded jury trial on the amount of the award. The cause has yet to proceed to a jury trial concerning the value of property.

¶ 8 The Regents responded to the landowner's allegations and sought to confirm the commissioners' report. On June 12, 2007, the trial court ruled that the landowner did not have standing to challenge the legality of the appointment of the individual members of the Regents.[13] On July 23, 2007, the trial court held a hearing on the exceptions to the commissioners' report. After the hearing, the court made numerous findings and affirmed the award of the commissioners.

¶ 9 It is from this July 23, 2007, order which the landowner appealed. The Court of

Civil Appeals affirmed the trial court, but it neglected to address any claims which were resolved by the trial court's June 12, 2007, order because the landowner did not appeal from that order. We granted certiorari on October 12, 2009.

**I.**

¶ 10 FAILURE TO APPEAL AN INTERLOCUTORY ORDER REGARDING STANDING IS NOT PRECLUSIVE OF THE ISSUE IN THIS APPEAL.

¶ 11 The Court of Civil Appeals, *sua sponte*, determined that because the landowner did not appeal the trial court's June 12, 2007 order, certain issues were precluded from review in this appeal. This Court reviews final orders,[14] interlocutory orders

---

holding today,—that the landowner may not collaterally attack the legality of the Regents as an entity—disposes of this issue as well because the allegation is nothing more than another attempted collateral attack.

13. The landowner filed an answer and counterclaim to the petition, even though no such pleadings are authorized in condemnation proceedings. On September 7, 2006, the Regents filed a motion to strike the answer and counterclaim as an unauthorized pleading. Condemnation proceedings involve the filing of three pleadings, and no other pleading is allowed. *Board of County Com'rs of Creek County v. Casteel*, 1974 OK 31, ¶ 15, 522 P.2d 608. The property owner's right to challenge all aspects of the plaintiff's right to condemnation is found in the timely and proper filing of an exception to the report of the commissioners. *Public Service Co. of Oklahoma v. B. Willis, C.P.A., Inc.*, 1997 OK 78, ¶ 17, 941 P.2d 995 *cert. denied* 552 U.S. 813, 128 S.Ct. 66, 169 L.Ed.2d 16 (2007); *Young v. Seaway Pipeline, Inc.*, 1977 OK 248, ¶ 10, 576 P.2d 1144 (the statutory condemnation procedure provides no place for the assertion of factual defenses until after filing of the report of the commissioners); *Board of County Com'rs of Creek County v. Casteel*, supra at ¶ 16 (we do not approve of filing answers, rather only an objection to the report of the commissioners and demand for a jury trial meets the statutory requirement necessary for bringing forth the issue of the necessity of the taking). *See also, Oklahoma City v. Morris*, 1965 OK 104, ¶¶ 10–14, 405 P.2d 1; *Town of Ames v. Wybrant*, 1950 OK 197, ¶ 13, 220 P.2d 693. The trial court later, on June 12, 2007, struck these unauthorized pleadings.

14. Title 12 O.S. 2001 § 953 provides:

An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article.

Title 12 O.S. 2001 § 952 provides in pertinent part:

... (b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:

1. A final order;
2. An order that discharges, vacates or modifies or refuses to vacate or modify a provisional remedy which affects the substantial rights of a party; or grants, refuses, vacates, modifies or refuses to vacate or modify an injunction; grants or refuses a new trial; or vacates or refuses to vacate a final judgment;
3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; ...

**The failure of a party to appeal from an order that is appealable under either subdivision 2 or 3 of subsection (b) of this section shall not preclude him from asserting error in the order after the judgment or final order is rendered.** (Emphasis supplied).

*See* Oklahoma Supreme Court Rule 1.40, 12 O.S. Ch. 15, App. 1, which also provides that the failure of a party to appeal from any interlocutory order that is appealable either under the provisions of 12 O.S.1991 § 952 Subdivs. (b)2 or 3, or 58 O.S.1991 § 721, shall not preclude it from asserting errors in that interlocutory order in an appeal taken from the judgment or final order in the case.

appealable by right,[15] and certified interlocutory orders.[16] The order of June 12, 2007, did not qualify as one of these orders, but even if it had, an appellant is not precluded from re-asserting errors after a final order is entered.[17] Here, the trial court's order of July 23, 2007, which ruled on exceptions to the commissioners' report was the appealable order.[18] As previously discussed, the land-

**15.** Rule 1.60 of the Oklahoma Supreme Court Rules, 12 O.S. 2001 Ch. 15, App. 1, provides:

Orders of the district court that are interlocutory and may be appealed by right in compliance with the rules in this part are those that: (a) Grant a new trial or vacate a judgment on any ground, including that of newly discovered evidence or the impossibility of making a record (12 O.S.1991 § 655, 12 O.S.1991 § 952 (b)(2)); (b) Discharge, vacate or modify or refuse to discharge, vacate or modify an attachment (12 O.S.Supp.1993 § 993 (A)(1)); (c) Deny a temporary injunction, grant a temporary injunction except where granted at an ex parte hearing, or discharge, vacate or modify or refuse to discharge, vacate or modify a temporary injunction (12 O.S.1981 § 952 (b)(2) and 12 O.S.Supp.1993 § 993 (A)(2)); (d) Discharge, vacate or modify or refuse to discharge, vacate or modify a provisional remedy which affects the substantial rights of a party (12 O.S.1991 § 952 (b)(2) and 12 O.S.Supp.1993 § 993 (A)(3)); (e) Appoint a receiver except where the receiver was appointed at an ex parte hearing, refuse to appoint a receiver or vacate or refuse to vacate the appointment of a receiver (12 O.S.Supp.1993 § 993 (A)(4)); (f) Direct the payment of money pendente lite except where granted at an ex parte hearing, refuse to direct the payment of money pendente lite, or vacate or refuse to vacate an order directing the payment of money pendente lite (12 O.S.Supp.1993 § 993 (A)(5)); (g) Certify or refuse to certify an action to be maintained as a class action (12 O.S.Supp. 1993 § 993 (A)(6)); (h) Are enumerated in 58 O.S.1991 § 721 (interlocutory probate orders but not orders allowing a final account and granting a decree of distribution); or (i) Are made under the provisions of 15 O.S. 1991 § 817.

**16.** Oklahoma Supreme Court Rule, 1.50, 12 O.S. 2001 Ch. 15, App. 1 provides in pertinent part:

Any interlocutory order not appealable by right under the statutes, which order affects a substantial part of the merits of the controversy, may be brought for review to this Court in compliance with the rules in this Part when the trial judge or the judge's successor has certified that an immediate appeal from that order may materially advance the ultimate termination of the litigation. In the exercise of its statutory discretion this Court may refuse to review a certified interlocutory order. 12 O.S.Supp.1991 § 952, Subdiv. (b)(3)....

**17.** Title 12 O.S. 2001 § 952 (b), see note 14, supra. Oklahoma Supreme Court Rule, 1.40, 12 O.S. 2001 Ch. 15, App. 1. *See Oklahoma City Urban Renewal Auth. v. City of Oklahoma City*, 2005 OK 2, ¶ 9 fn. 14, 110 P.3d 550; *In re Estate of Johnson*, 1989 OK 98, ¶ 6, 780 P.2d 692.

**18.** *McMillian v. Holcomb*, 1995 OK 117, ¶ 3, 907 P.2d 1034; *Watchorn Basin Assoc. v. Oklahoma Gas & Electric Co.*, 1974 OK 27, ¶ 12, 525 P.2d 1357; *Town of Ames v. Wybrant*, see note 13, supra. *See, McMillian, supra*, at ¶ 14, 907 P.2d 1034, discussing that after the award has been made, the proceeding may be further prosecuted and defended regarding the award. The further proceedings not prohibited are those concerning "the sufficiency or insufficiency of the compensation"—those issues that remain for jury trial here. Like *McMillian*, this cause concerns a challenge to the necessity of the taking, not the sufficiency of the award. *See also Jerry Scott Drilling Co., Inc. v. Scott*, 1989 OK 131, ¶ 9, 781 P.2d 826, discussing the right to immediate appeal in condemnation cases when the trial court has ruled on exceptions to the report of the commissioners, but under the Surface Damage Act, an appeal is premature when a demand for a jury trial has been made, but not held.

Oklahoma Supreme Court Rule 1.20, 12 O.S. 2001 Ch. 15, App. 1 provides in pertinent part:

(a) Judgment. A judgment is the final determination of the rights of the parties in an action. 12 O.S.1991 § 681. The term "judgment" is synonymous with a final order for the purpose of these rules. A judgment includes any decision appealable under the provisions of: (1) 12 O.S.1991 §§ 952, 953 (general civil appeal); ... (13) 66 O.S.1991 § 56 (condemnation appeals); ...

Title 66 O.S. 2001 § 56 provides:

Either party aggrieved may appeal from the decision of the district court to the Supreme Court; but such review or appeal shall not delay the prosecution of the work on such railroad over the premises in question, if such corporation shall first have paid to the owner of said real property, or deposited with the said clerk for said owner, the amount so assessed by said commissioners or district court; and in no case shall said corporation be liable for the costs on such review or appeal, unless the owner of such real property shall be adjudged entitled, upon either review or appeal, to a greater amount of damages than was awarded by said commissioners. The corporation shall in all cases pay the costs and expenses of the first assessment. And in case of review or appeal, the final decision may be transmitted by the clerk of the proper court, duly certified, to the proper register of deeds,

owner raised the issue in the exception to the commissioners' report. Consequently, any errors which could have been alleged after the previous June 12, 2007, ruling may now also be considered because they were asserted in this appeal.

## II.

¶ 12 **THE LANDOWNER'S STANDING TO CHALLENGE THE TAKING DOES NOT INCLUDE THE ISSUE OF WHETHER THE REGENTS WERE PROPERLY, CONSTITUTIONALLY FORMED. REGARDLESS, BECAUSE THEY WERE ACTING AS *DE FACTO* REGENTS, THEIR ACTIONS WERE VALID.**

■ ¶ 13 The landowners challenge the commissioners' report by arguing that: 1) the Oklahoma Constitution, art. 6, § 31A [19] requires a majority of the nine Regents to be farmers; and 2) because the majority were not farmers, their actions of condemnation are unlawful. The Regents contend that the landowner's resistance to condemnation is nothing more than a collateral attack on their qualifications to hold the office, which is prohibited in eminent domain proceedings. We agree.

a. **The Oklahoma State University Board of Regents is a public corporation with the legal authority to acquire and take title to real property through the power of eminent domain/condemnation.**

■ ¶ 14 The inherent power of an entity to take private property for public use is called the power of eminent domain.[20] The power of eminent domain is limited by the Fifth Amendment of the United States Constitution,[21] and art. 2, §§ 23–24 of the Oklahoma Constitution.[22] Section 24 requires

to be by him filed and recorded as hereinbefore provided for the recording of the report, and with like effect. The fee of land over which a mere easement is taken, without the consent of the owner, shall remain in such owner subject only to the use for which it was taken.

Title 66 O.S. 2001 § 54 provides:

When possession is taken of property condemned, as provided herein, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of said compensation.

**19.** The Oklahoma Constitution art. 6, § 31A, see note 2, supra.

**20.** *In re Initiative Petition No. 382, State Question No. 729*, 2006 OK 45, ¶ 10, 142 P.3d 400.

**21.** The Fifth Amendment to the United States Constitution provides in pertinent part:

No person shall ... be deprived life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation.

The Fifth Amendment of the U.S. Constitution is made applicable to the States by the Fourteenth Amendment.

**22.** The Oklahoma Constitution art. 2, § 23 provides:

No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, or for drains and ditches across lands of others for agricultural, mining, or sanitary purposes, in such manner as may be prescribed by law.

The Oklahoma Constitution art. 2, § 24 provides:

Private property shall not be taken or damaged for public use without just compensation. Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken. Any special and direct benefits to the part of the property not taken may be offset only against any injury to the property not taken. Such compensation shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law. Provided however, in no case shall the owner be required to make any payments should the benefits be judged to exceed damages. The commissioners shall not be appointed by any judge or court without reasonable notice having been served upon all parties in interest. The commissioners shall be selected from the regular jury list of names prepared and made as the Legislature shall provide. Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation. The fee of land taken by common carri-

that: 1) the private property taken be for public use/public purpose; 2) just compensation be paid to the property owner; and 3) that the determination of the character of the use is a judicial question.[23] Condemnation proceedings[24] do not involve tort claims and are not civil actions at law or suits in equity. Instead, they are the special statutory proceedings for the purpose of ascertaining the compensation to be paid for property to be appropriated.[25]

 ¶ 15 The power of eminent domain remains dormant until the Legislature, by specific enactment, delineates the manner

by which and the entity through which it may be exercised.[26] A governmental body subordinate to the State may not exercise, create, extend, or expand a power of eminent domain in the absence of statutory authority.[27] When such an entity properly employs the power of eminent domain, it acquires an interest in the property ranging from an easement to fee simple title, for which the entity must pay the landowner just compensation.[28]

 ¶ 16 Pursuant to the Oklahoma Constitution, art. 6, § 31A and 70 O.S. 2001 § 3411,[29] the Regents as a public body corpo-

ers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken. In all cases of condemnation of private property for public or private use, the determination of the character of the use shall be a judicial question.

**23.** The Oklahoma Constitution art. 2, § 24, see note 22, supra; *Board of County Commissioners of Muskogee County v. Lowery*, 2006 OK 31, ¶ 9, 136 P.3d 639; *City of Midwest City v. House of Realty, Inc.*, 2004 OK 56, ¶ 21, 100 P.3d 678; *Public Service Co. of Oklahoma v. B. Willis, C.P.A., Inc.*, see note 13, supra at ¶ 19; *Delfeld v. City of Tulsa*, 1942 OK 402, ¶ 10, 131 P.2d 754.

**24.** The proceedings which are generally followed for condemnation are found at 66 O.S.2001 §§ 54–57.

**25.** *Ward Petroleum Corp. v. Steward*, 2003 OK 11, ¶ 7, 64 P.3d 1113; *Curtis v. WFEC Railroad Co.*, 2000 OK 26, ¶ 13, 1 P.3d 996; *State Dept. of Highways v. O'Dea*, 1976 OK 133, ¶ 6, 555 P.2d 587; *Gaylord v. State Department of Highways*, 1975 OK 63, ¶ 16, 540 P.2d 558. A condemnation proceeding is strictly controlled by the constitution and statutes. *Williams Natural Gas Co.*, 1997 OK 72, ¶ 25, 952 P.2d 483; *Carter v. City of Oklahoma City*, 1993 OK 134, ¶ 12, 862 P.2d 77. See, *Curtis v. WFEC Railroad Co.*, supra, wherein a landowner sued a condemnor for damages to land which occurred while the condemnor was on the property pursuant to an easement it had obtained through condemnation. We held that the remedy for the tortious conduct of the condemnor was through a separate and distinct cause of action such as trespass. *But see Allen v. Transok Pipe Line Co.*, 1976 OK 53, ¶ 28, 552 P.2d 375, wherein we recognized that a separate and distinct tort for damages in trespass may exist when the trespasser thinks the power of eminent domain could have been utilized but was not. In this circumstance, we held that the trespasser can cross-petition for condemnation and the two causes of actions can be tried in the same case. In *Ward Petroleum Corp. v. Steward*, 2003 OK 11, ¶ 11, 64 P.3d 1113, a case which

did not involve condemnation, but did involve a special proceeding under the Surface Damage Act, 52 O.S. 2001 § 318 et seq., the proceedings under the Act were identical to condemnation proceedings. We held that for the sake of judicial convenience and efficiency, a surface owner may file a related tort claim in the same case in which a party has initiated a proceeding under the Act. However, the trial judge must take special precautions to keep the actions on two distinct procedural tracks. One governed by the Act, and the other by the general pleading code. We have never applied this rationale to condemnation proceedings and alleged related tort claims, nor do we do so today.

**26.** *In re Initiative Petition No. 382, State Question No. 729*, see note 20, supra; *City of Midwest City v. House of Realty, Inc.*, see note 23, supra at ¶ 19; *City of Tahlequah v. Lake Region Elec. Coop., Inc.*, 2002 OK 2, ¶ 7, 47 P.3d 467; *City of Pryor Creek v. Pub. Serv. Co.*, 1975 OK 81, ¶ 9, 536 P.2d 343.

**27.** *Board of County Commissioners of Muskogee County v. Lowery*, see note 23, supra at ¶ 10; *City of Midwest City v. House of Realty, Inc.*, see note 23, supra.

**28.** *In re Initiative Petition No. 382, State Question No. 729*, see note 20, supra.

**29.** Title 70 O.S. 2001 § 3411 provides:

(a) The Board of Regents for Oklahoma Agricultural and Mechanical Colleges shall be a body corporate and shall adopt an official seal, which shall be attached to all official documents issued by the Board and all contracts entered into by the Board.
(b) The Board of Regents shall annually elect from its membership a Chairman, a Vice Chairman, and a Secretary, each of whom shall serve for a term of one (1) fiscal year, and who shall have such powers and duties as may be prescribed by the Board. The Board shall adopt such rules and regulations as it deems necessary to govern its proceedings and the

rate possess the power of eminent domain. Oklahoma State University [30] is a public corporation,[31] and it is led by its Board of Regents.[32] The Regents are public officers [33] and their eligibility and terms of appointment

are provided by 70 O.S. Supp. 2003 § 3409.[34] Among the Regents' many powers and duties is the authority to acquire and take title to real property through legal proceedings,[35] including the authority to exercise the power of eminent domain/condemnation.[36]

conduct of its business. The Secretary of the Board shall keep minutes of all meetings and all transactions considered at such meetings, and it shall not be necessary that the Secretary be a member of the Board.

**30.** The University is now referred to as Oklahoma State University, but it has been previously known as Oklahoma Agricultural and Mechanical College, and Oklahoma State University of Agriculture and Applied Science. Title 70 O.S. 2001 § 3401, see note 9, supra.

**31.** The Okla. Const. art. 6, § 31A, see note 2, supra; 70 O.S. 2001 § 3411 see note 29, supra; 70 O.S. 2001 § 3412, see note 10, supra; 70 O.S. 2001 § 3401, see note 9, supra; *Baker v. Carter,* 1933 OK 484, ¶ 39, 165 Okla. 116, 25 P.d 747; *Oklahoma Agric. & Mech. College v. Willis,* 1898 OK 17, ¶ 6, 6 Okla. 593, 52 P. 921, 40 L.R.A. 677.

**32.** Title 70 O.S. 2001 § 3401, see note 9, supra

**33.** *Oklahoma Agric. & Mech. College v. Willis,* see note 31, supra. See also 70 O.S. 2001 § 3410 which requires the Board of Regents to subscribe to the oaths required of state officials generally.

**34.** Title 70 O.S. Supp. 2003 § 3409 provides in pertinent part:
(a) The Board of Regents created by Section 31a, Article 6, Oklahoma Constitution, shall be known as the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges. It shall consist of nine (9) members, one of whom shall be the President of the State Board of Agriculture, the remaining eight members to be appointed by the Governor, by and with the advice and consent of the Senate. Provided, that persons now serving on such Board shall be members of and shall continue to serve on the Board for the terms for which they were appointed.
(b) Appointments shall be to numbered positions on the Board, and the terms of members of the Board shall be, as follows: ...
(c) A majority of the members appointed by the Governor shall be farmers, who are actually engaged in farming and/or livestock growing as their principal business or occupation in earning a livelihood; and no state, national or county officer shall be appointed as a member of the Board until two (2) years after tenure as such officer has ceased.
(d) No member of the Board of Regents shall be employed upon any work to be performed in connection with any of the Agricultural Colleges or Oklahoma State University of Agriculture and Applied Science, nor shall any member of said Board enter into any contract or

business dealings with any of said Agricultural Colleges, in the way of buying, selling or exchanging livestock, or any other business transactions involving a financial consideration.
(e) Members of the Board shall be removable only for cause, as provided by law for this removal of officers not subject to impeachment.
(f) Vacancies on the Board shall be filled by the Governor, for the unexpired term, by and with the advice and consent of the Senate.

**35.** Title 70 O.S. Supp. 2005 § 3412, see note 10, supra.

**36.** Title 66 O.S. 2001 § 57, see note 8, supra; 70 O.S. 2001 § 3401, see note 9, supra; 70 O.S. Supp. 2005 § 3412, see note 10, supra; 70 O.S. 2001 § 4001 provides in pertinent part:

A. Subject to and in accordance with the terms hereof, the boards of regents for all state educational institutions for and in behalf of any university, college, school or institution under the jurisdiction of each of the said boards are hereby authorized from time to time to set aside such portion of their respective campuses or of the campuses under the jurisdiction of said boards, or any other land owned or leased by said boards, as may be necessary and suitable for the construction thereon of dormitories, student housing, cooperative group housing, parking facilities, adult education facilities, kitchens, dining halls, auditoriums, student union buildings, field houses, stadiums, public utility plants and systems for the supplying of water, gas, heat or power and other self-liquidating projects and other revenue-producing buildings for the university, college or institution or related institution, which may include public, nonprofit or private entities, deemed necessary by said boards for the comfort, convenience and welfare of their students, and suitable for the purposes for which said institutions were established, including additions to existing buildings used for such purposes; **to acquire through construction, purchase, condemnation or any combination thereof** such dormitories, student housing, cooperative group housing, parking facilities, adult education facilities, kitchens, dining halls, auditoriums, student union buildings, field houses, stadiums, public utility plants and systems and other revenue-producing buildings and acquire or construct additions, improvements and extensions to existing buildings and structures used for such purposes and to equip, furnish, maintain and operate all such build-

**b. Standing to challenge the taking of real property by condemnation/eminent domain does not include the authority to collaterally attack the legality of a corporation's existence when it is acting as a *de facto* corporation.**

¶ 17 Standing refers to the legal right of a person to challenge the conduct of another in a judicial forum.[37] An initial inquiry must reveal that: 1) an actual or threatened injury has occurred; 2) some relief for the harm can be given; and 3) the interest to be guarded is within a statutorily or constitutionally protected zone.[38] Not only is standing confined to those whose interest in the controversy is direct, immediate and substantial, a litigant must also have a personal stake in the outcome.[39]

¶ 18 When standing is placed in issue in a case, the question to be answered is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue—not whether the issue itself is justiciable.[40] "Standing" is the right to commence litigation, to take the initial step that frames legal issues for ultimate adjudication by a court or jury.[41] When standing of a party is brought into issue, the focus is on the party seeking to get the complaint before the court, and not on the issues the party wishes to have adjudicated.[42]

¶ 19 We have no doubt, nor is it disputed, that the landowner has standing to challenge the taking because they suffered injury to a legally protected interest as contemplated by statutory or constitutional provisions. However, this does not address the question of whether such standing includes the issue the landowners wish to have adjudicated—the legality of the existence of the Regents because they may not all be farmers.

¶ 20 Where the question of right or title to office is put in issue, the appropriate remedy is an action in the nature of *quo warranto*.[43] The common law writ of *quo*

ings and structures; and to **acquire through purchase, condemnation or otherwise any land, rights-of-way, easements, licenses and permits needed for the present or future use of such buildings, structures, plants and systems;** provided, that such boards of regents shall not construct or acquire, for their respective institutions, such utility plants or systems whose capacity is in excess of the present or reasonably contemplated future needs of such institutions or related institutions, except as provided in subsection C hereof. (Emphasis supplied.) . . . .

37. *Hendrick v. Walters*, 1993 OK 162, ¶ 4, 865 P.2d 1232; *State ex rel. Cartwright v. Okla. Tax Com'n*, 1982 OK 146, ¶ 6, 653 P.2d 1230.

38. *Hendrick v. Walters*, see note 37, supra; *Independent School Dist. No. 9 v. Glass*, 1982 OK 2, ¶ 10, 639 P.2d 1233.

39. *Hendrick v. Walters*, see note 37, supra; *Independent School Dist. No. 9 v. Glass*, see note 38, ¶ 8, supra.

40. *Flast v. Cohen*, 392 U.S. 83, 99–100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

41. *State ex rel. Cartwright v. Oklahoma Tax Com'n*, see note 37, supra.

42. *Democratic Party of Oklahoma v. Estep*, 1982 OK 106, ¶ 7, 652 P.2d 271; *Application of State ex rel. Dept. of Transp.*, 1982 OK 36, ¶ 6, 646 P.2d 605.

43. *State ex rel. Stuart v. Rapp*, 1981 OK 87, ¶ 3, 632 P.2d 388; *State ex rel. Oklahoma Tax Commission v. Mourer*, 1979 OK 92, ¶ 4, 596 P.2d 882; *Arterbery v. Hargrove*, 1946 OK 242, ¶ 0, 197 Okla. 514, 172 P.2d 990. Title 12 O.S. 2001 § 1531 provides:

The writ of quo warranto, and proceedings by information in the nature of quo warranto, are abolished and the remedies heretofore obtainable in those forms may be had by civil action; provided, that such cause of action may be instituted and maintained by the contestant for such office at any time after the issuance of the certificate of election by the state, county, township or city election boards, and before the expiration of thirty (30) days after such official is inducted into office; provided further, that all suits now pending, contesting such elections, shall not be dismissed because of the prematurity as to time of their commencement, which shall be deemed valid and timely, if commenced after the issuance of the election certificate or after twenty (20) days after the result of said election having been declared by such election board; and provided further, that this act shall not apply to primary election.

The statutes governing *quo warranto* actions are found at 12 O.S. 2001 §§ 1531–1538. A *quo warranto* action differs and is independent from actions which attempt to remove a public officer for cause as governed by 51 O.S. 2001 § 91 *et seq.*, or the law regarding vacancies and resignations from office. 51 O.S. 2001 § 3.1 and §§ 8–10.

*warranto* was abolished in 1903, but the statutes provided remedies obtainable in the nature of *quo warranto* by civil action.[44] An action in the nature of *quo warranto* challenges the right to hold public office or the legal existence of a corporation, and it may be brought in the Supreme Court or district court.[45] Only where the issue raised is held to be *publici juris*, will the Supreme court assume original jurisdiction.[46] *Quo warranto* requires the attorney general, district attorney, or a contestant for the office to challenge the incumbent's title,[47] and a collateral attack by a private individual is not permitted.[48]

44. Title 12 O.S. 2001 § 1531, see note 43, supra. *Oklahoma Tax Commission v. Mourer,* see note 43 at ¶ 2, supra. In *Robison v. Chapman,* 1932 OK 507, ¶¶ 18–19, 158 Okla. 244, 13 P.2d 173 the Court stated:

> . . . At common law no one but the law officers of the crown could sue out a writ of quo warranto.
> . . . The statute of this state which abolishes the writ of quo warranto, substituting therefor a civil action by which the remedies theretofore obtainable under the writ of quo warranto and proceedings by information in the nature of quo warranto, and modifying the common-law rule with reference to who might prosecute the action . . .

For an explanation of the common law writ, see *Painter v. United States ex rel. Soper,* 98 S.W. 352 (Ct.App.Indian Terr.1906)

45. Title 12 O.S. 2001 § 1532 provides:

> Such action may be brought in the Supreme Court or in the district court, in the following cases:
> 1st, When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, or shall claim any franchise within this state or any office in any corporation created by authority of this state;
> 2nd, Whenever any public officer shall have done or suffered any act which, by the provisions of law, shall work a forfeiture of his office;
> 3rd, When any association or number of persons shall act within this State as a corporation without being legally incorporated;
> 4th, When any corporation does or admits acts which amount to a surrender or a forfeiture of its rights and privileges as a corporation, or when any corporation abuses its power or intentionally exercises powers not conferred by law;
> 5th, Where any corporation claims, by virtue of a congressional grant, any of the public lands or Indian lands to which the Indian title or right of occupancy has been extinguished;
> 6th, For any other cause for which a remedy might have been heretofore obtained by writ of quo warranto, or information in the nature of quo warranto.

46. *Nesbitt v. Apple,* 1995 OK 20, ¶ 5, 891 P.2d 1235 (settling dispute over lawful holder of office of corporation commissioner); *State ex rel. Stuart v. Rapp,* see note 43 at ¶ 3, supra (qualification of district judge); *State ex rel. Oklahoma Tax Commission v. Mourer,* see note 43 at ¶ 4, supra

(appointee to board of equalization); *State ex rel. Blankenship v. Freeman,* 1968 OK 54, ¶ 5, 440 P.2d 744 (act of corporation commissioners constituted forfeiture of office); *State v. Rowe,* 1931 OK 328, ¶ 9, 300 P. 727 (appointment to Court of Criminal Appeals). *See also Hendrick v. Walters,* see note 37, supra, wherein the Court assumed original jurisdiction to determine public-law controversy regarding qualification of office and the statutory oath. '

47. Title 12 O.S. 2001 § 1533. *Hendrick v. Walters,* see note 37 ¶ 4 fn. 11, supra. *See State ex rel. Blankenship v. Freeman,* see note 46, supra (action brought by State Attorney General); *Gardner v. Scott,* 1951 OK 319, ¶ 2, 237 P.2d 863 (action brought by candidate for school board). *See also, State ex rel. Rice v. Dunning,* 1958 OK 58, ¶ 6, 322 P.2d 1067 (action brought by county attorney authorized); *Wooten v. State ex rel. Butler,* 1951 OK 132, ¶ 10, 230 P.2d 889 (county attorney authorized to bring action on behalf of state); *State ex rel. Williams v. Batson,* 1934 OK 752, 39 P.2d 76 (county attorney authorized to bring action to oust appointee for judge on ground that the judge lacked constitutional qualifications); *Byrd v. State,* 1924 OK 535, ¶ 7, 226 P. 362 (county attorney can challenge offices of members of board of education); *State ex rel. Ballard Ins. Com'r v. Hooker,* 1912 OK 424, ¶ 5, 33 Okla. 522, 126 P. 231 (Insurance Commissioner is authorized to proceed quo warranto on behalf of state).

48. *The Town of Luther v. State ex rel. Harrod,* 1967 OK 59, ¶ 30, 425 P.2d 986; *Jones v. City of Oklahoma City,* 1952 OK 354, ¶ 6, 207 Okla. 431, 250 P.2d 17; *Robison v. Chapman,* 1932 OK 507, ¶ 36, 158 Okla. 244, 13 P.2d 173. *Shore v. Board of Education of Town of Crescent et al.,* 1924 OK 222, ¶ 29, 97 Okla. 273, 223 P. 867. *See also City of Bethany v. Mason,* 1949 OK 190, ¶ 20, 202 Okla. 66, 210 P.2d 353 (challenge to incorporation of city must be brought by state); *Thomas v. Dawson,* 1941 OK 212, ¶ 3, 189 Okla. 193, 115 P.2d 136 (action challenging members of school board); *Frittz v. Westmoreland,* 1931 OK 303, ¶ 2, 149 Okla. 219, 299 P. 884 and *Sugart v. Thorpe,* 1931 OK 23, ¶ 7, 295 P. 605 (motion to intervene denied because private individuals cannot proceed quo warranto against consolidated school district); *State ex rel. McFayden v. Holtzclaw,* 1931 OK 533, ¶ 17, 151 Okla. 163, 2 P.2d 1022 (appeal questioning validity of corporate school district cannot be brought by individ-

¶ 21 In *Macy v. Oklahoma City School District No. 89*, 1998 OK 58, ¶¶ 14–16, 961 P.2d 804, a resident of a former school district brought a declaratory judgment action seeking a determination regarding an election controversy. We addressed a plaintiff's standing to contest such a controversy. We examined: 1) the type of claim made; and 2) the interest of the party pressing that claim. Citing with approval from the Supreme Court of Kansas,[49] we explained that ordinarily it is no justiciable concern of private individuals that these public subdivisions and organizations of the state may have some infirmity in their organization, nor do such individuals have a right to equitable relief to void an election organizing a school district.[50]

¶ 22 The rule that private individuals may not do indirectly or collaterally what they cannot do directly has been illustrated in the doctrine of *de facto* corporations and *de facto* officers. Under the *de facto* doctrine, a corporation's or municipal corporation's actions will be upheld as valid when: 1) a valid law exists authorizing the corporation; 2) a bona fide attempt to organize under such law is made; and 3) an actual good faith exercise of corporate powers.[51]

¶ 23 A *de facto* officer is similarly treated like a *de facto* corporation. For example, in *Ajax Contractors, Inc. v. H.L. Myatt*, 1967 OK 19, ¶ 16, 424 P.2d 30, a taxpayer brought an action to challenge city officials' award of a contract to a particular bidder. The basis of the challenge was that the city council proceeding was void because one council member had moved and was thus unqualified to vote. The Court recognized that, regardless of whether the council member had become disqualified, the member was an officer *de facto* who was not subject to collateral attack. Relying on *Hatfield v. Jimerson*, 1961 OK 250, ¶ 9, 365 P.2d 980, a case in which we held that *de facto* officers could not be collaterally attacked, the Court stated that a *de facto* officer is one whose

---

ual); *Partridge v. Shore*, 1926 OK 330, ¶ 8, 118 Okla. 15, 246 P. 453 (when county attorney declines to institute action, writ of mandamus cannot be used to compel); *Cheek v. Eye*, 1923 OK 750, ¶¶ 2–3, 96 Okla. 44, 219 P. 883; *Griffin et al. v. Thomas*, 1922 OK 134, ¶ 7, 86 Okla. 70, 206 P. 604; *Chambers v. Walker*, 1922 OK 117, ¶ 3, 85 Okla. 289, 206 P. 202; *Fowler v. Park*, 1920 OK 239, ¶ 8, 79 Okla. 1, 190 P. 668; *Earlboro v. Howard*, 1915 OK 348, ¶ 5, 47 Okla. 455, 149 P. 136. One limited exception to such collateral attack appears to be when the legal existence of the court exercising jurisdiction is challenged. *See In re Jackson v. Freeman*, 1995 OK 100, 905 P.2d 217, the Court addressed the standing of a plaintiff who challenged his drug conviction by an emergency panel of the Court of Criminal Appeals by seeking a writ of *quo warranto*, challenging the legality of the existence of the panel. We noted that *quo warranto* is an action used by an individual to assert a substantive right in a particular office claimed by that individual. The petitioner in our case today cannot maintain *quo warranto* to challenge the validity of the Emergency Appellate Division of the Court of Criminal Appeals. He has no *quo warranto* standing sufficient to bring such a proceeding. This did not end the plaintiff's pursuit, instead, we held that because this Court possessed the power to review jurisdictional claims lodged against the Court of Criminal Appeals, we could assume jurisdiction in prohibition. Consequently, we allowed the plaintiff's collateral attack to challenge the panel. A similar result was reached in *State ex rel. Rucker v. Tapp*, 1963 OK 37, 380 P.2d 260, when the legal existence of a county court was challenged. We noted a marked distinction between

an action to determine one's title to an office and a challenge to the legal existence of a court. We held that although there was no legal authority for the court, the acts of the judges, as *de facto* judges, were valid. *See also Robertson v. Brewer*, 1945 OK 89, ¶ 8, 195 Okla. 222, 156 P.2d 804.

49. *State ex rel. McFadyen v. Holtzclaw*, 1931 OK 533, ¶ 14, 151 Okla. 163, 2 P.2d 1022, *quoting Schur v. Rural High School District No. 1*, 112 Kan. 421, 210 P. 1105, 1106 (1922) (Emphasis added).

50. In *Macy v. Oklahoma City School District No. 89*, 1998 OK 58, ¶ 17, 961 P.2d 804, the Court noted that equity has been used in *Walker v. Oak Cliff Volunteer Fire Protection Dist.*, 1990 OK 31, ¶ 14, 807 P.2d 762, to provide a remedy for the purpose of challenging an invalid election if there is no statutory provision allowing an election contest, and if the challenge involves civil or property rights, rather than political rights. In *Walker*, an action was brought to permanently enjoin operation of a fire protection district, and we held that where there was no other statutory provision allowing an election contest involving civil or property rights rather than political rights, the controversy my proceed in equity.

51. *City of Bethany v. Mason*, 1949 OK 190, ¶ 20, 202 Okla. 66, 210 P.2d 353; *Industrial Building & Loan Ass'n v. Williams*, 1928 OK 376, ¶ 6, 131 Okla. 167, 268 P. 228 (corporation); *Swofford Bros. Dry Goods Co. v. Owen et al.*, 1913 OK 413, ¶ 2, 37 Okla. 616, 133 P. 193 (corporation).

acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons. Where the functions of the office are exercised by one who was in the actual possession of it under color of title, even if the officer may not be properly qualified in accordance with the law, his or her acts will be upheld as valid and cannot be collaterally attacked.

¶ 24 The same result has been applied whether the challenge was brought in the context of a member of a school board,[52] a municipal corporation,[53] a union graded school district,[54] a City's board of adjustment,[55] or a county's board of equalization.[56] In *City of Bethany v. Mason*, 1949 OK 190, ¶ 20, 210 P.2d 353, a case in which a city attempted to maintain a *quo warranto* action to challenge the validity of the incorporation of another municipality, the Court recognized that when a municipal corporation exists *de facto*, the validity of an incorporation and the legal existence of the municipality cannot be questioned in the proceedings in any action between a private citizen—even if the action involves the taking of land by eminent domain. This has been the well settled rule of law for at least a century and a half.[57] In a suit to condemn land, where a corporation is *de facto*, the right to contest its existence may not be collaterally questioned in an eminent domain proceeding.[58] Rather, right to contest a corporation's existence belongs only in a proceeding for that purpose brought by the state.[59]

 ¶ 25 The same rationale is applicable here, where: 1) the corporate body, the Regents, are undisputedly a public corporation which validly exists pursuant to the Okla.

**52.** *Hatfield v. Jimerson*, 1961 OK 250, ¶ 9, 365 P.2d 980; *Thomas v. Dawson*, 1941 OK 212, 189 Okla. 193, 115 P.2d 136.

**53.** *City of Bethany v. Mason*, 1949 OK 190, ¶ 20, 202 Okla. 66, 210 P.2d 353; *Earlboro v. Howard*, 1915 OK 348, ¶ 5, 47 Okla. 455, 149 P. 136.

**54.** *Shore v. Board of Education of Town of Crescent*, 1924 OK 222, ¶ 12, 97 Okla. 273, 223 P. 867; *Griffin v. Thomas*, 1922 OK 134, ¶ 7, 86 Okla. 70, 206 P. 604.

**55.** *Torrance v. Bladel*, 1945 OK 41, ¶ 13, 195 Okla. 68, 155 P.2d 546.

**56.** *State ex rel. Oklahoma Tax Commission v. Mourer*, see note 43 at ¶ 27.

**57.** *City of Bethany v. Mason*, see note 53, supra; *Illinois State Trust Co. v. St. Louis, I.M. & S. Railroad Co.*, 208 Ill. 419, 70 N.E. 357 (1904) (private party cannot challenge de facto corporation collaterally even in eminent domain proceedings); *Oregon Short Line R. Co. v. Postal Tel. Cable Co. of Idaho*, 111 F. 842, 845 (D. Idaho 1901) (showing of *de facto* corporation is sufficient and the right to further contest corporations authority in eminent domain proceedings belongs only to the state); *Kansas & T. Coal Railroad Co. v. Northwestern Coal & Mining Co.*, 161 Mo. 288, 61 S.W. 684, 51 L.R.A. 936 (1901) (regularity of railroad's organization can only be questioned *quo warranto*, not in condemnation); *Portland & G. Turnpike Co. v. Bobb*, 88 Ky. 226, 10 S.W. 794, 10 Ky.L.Rptr. 796 (1889) (failure to comply with statutory requirements can only be taken advantage of in direct proceeding to annul the franchise, not in condemnation proceeding); *Thomas v. St. Louis, B. & S. Railroad Co.*, 164 Ill. 634, 46 N.E. 8 (1897) (question of improperly exercising franchise was between de facto corporation and state and cannot be questioned in condemnation); *Lamming v. Galusha*, 81 Hun 247, 30 N.Y.S. 767 (N.Y.1894) (*de facto* corporation cannot be impeached collaterally by third parties); *In re Wintergreen Alley*, 11 Pa.C.C. 126, 1 Pa. D. 269 (Pa.Quar.Sess.1892) (where de facto corporate existence is shown, the right of eminent domain cannot be questioned by a private landowner in a proceeding to condemn land); *Bonaparte v. Baltimore, H & L. R.R. Co.*, 75 Md. 340, 23 A. 784 (1892) (the existence of a *de facto* corporation may not be challenged in a collateral way but must be brought *quo warranto*); *Reisner v. Strong*, 24 Kan. 410 (1880) (a *de facto* railroad may exercise the right of eminent domain and the legal existence of a *de facto* corporation can only be questioned by the state in a proceeding for that purpose); *The National Docks Railway Co. v. The Central Railroad Company of New Jersey*, 32 N.J.Eq. 755 (1880) (when corporation is de facto, private party cannot challenge, but action, instead, must be instituted by the state); *The Aurora and Cincinnati R.R. Co., v. Miller*, 56 Ind. 88 (1877) (recognizing that proceeding in the nature *quo warranto* was pending to challenge organization of railroad rather than through condemnation proceeding); *McAuley v. Columbus, Chicago and Indian Central Railroad Co.*, 83 Ill. 348 (1876)(In proceeding to condemn land, *de facto* corporation is sufficient); *Atkinson v. Marietta & Cincinnati R. Co.*, 15 Ohio St. 21 (1864)(corporate existence and the right to exercise the power of eminent domain cannot be collaterally attacked).

**58.** *Id.*

**59.** *Id.*

Const. art 6, § 31A; [60] 2) a bona fide attempt has been made to organize under such law; 3) all of the Regents were in actual possession of the office under color of title; and 4) they exercised their corporate powers in good faith. The Regents, collectively, as a corporate entity were *de facto*, and the Regents, individually, as officers of that entity were *de facto*. The fact that this is an eminent domain proceeding is of no consequence. Accordingly, we hold that the standing is two-pronged: although the landowner has standing to challenge the taking, such standing does not include the issue of whether the Regents were formed in compliance with the Oklahoma Constitution. And, even if it did, the Regents' actions were valid as *de facto* Regents.

## III.

### ¶ 26 THE TAKING WAS FOR A VALID PUBLIC PURPOSE.

■ ¶ 27 The landowner argues that the taking was not for a proper public purpose as required by the Oklahoma Const. art 2, §§ 23–24 [61] because the land was to be used as an "athletic village" instead of some use which would further the academic goals of the University. The Regents argue that the proposed use is a public use/public purpose. The question of whether a proposed taking is for a "public use" is a judicial question.[62] Nevertheless, here, the Legislature has already expressly declared such use a public use by its enactment of 70 O.S. 2001 § 4001,[63] in which the Regents are authorized to take land for the construction of, among other things, field houses, stadiums, and other revenue-producing buildings. The proposed "athletic village" fits squarely within this stated purpose and a review of the record reveals no other evidence which would con-

vince us that the proposed use does not qualify for a public use/purpose.

## IV.

### THE REGENTS NEGOTIATED IN GOOD FAITH.

■ ¶ 28 Finally, the landowner insists that the Regents negotiated in bad faith because they: 1) they used third parties to initiate negotiations; 2) and held a public meeting announcing that it would resort to eminent domain proceedings if necessary. The Regents contend that they have acted in good faith. A review of the record reflects that the gravamen of the landowners' complaint has more to do with the fact that the Regents did not readily succumb to their demands or that the Regents may have paid some other landowners more than the market value. Whether the Regents paid two, three, or four times the market value for any particular property has nothing to do with the issue of bad faith as far as negotiation with the McCloskey Brothers is concerned. As long as the Regents met the minimum constitutional standards for compensation and did not violate any other state law, there was nothing to preclude them from paying as much as they wanted for properties, but paying more than market value does not in and of itself constitute bad faith. There was no evidence presented which reflects bad faith behavior on behalf of the Regents. The landowners' argument is this regard is unpersuasive.

### CONCLUSION

¶ 29 The landowner's decision not to appeal from an interlocutory order regarding standing is not preclusive of the issue in this appeal. However, the landowner's standing to challenge the taking does not include

---

60. The Okla. Const. art. 6, § 31A, see note 2, supra; 70 O.S. 2001 3411 see note 29, supra. 70 O.S. 2001 § 3412, see note 10, supra; 70 O.S. 2001 § 3401, see note 9, supra; *Baker v. Carter*, see note 31, supra; *Oklahoma Agric. & Mech. College v. Willis*, see note 31, supra.

61. The Oklahoma Const. art 2, §§ 23–24, see note 22, supra.

62. The Oklahoma Constitution Art. 2, § 24, see note 22, supra; *Board of County Commissioners of Muskogee County v. Lowery*, see note 23, supra; *City of Midwest City v. House of Realty, Inc.*, see note 23, supra; *Public Service Co. of Oklahoma v. B. Willis, C.P.A., Inc.*, see note 13, supra; *Delfeld v. City of Tulsa*, see note 23, supra.

63. Title 70 O.S. 2001 § 4001, see note 36, supra.

standing to raise the issue of whether the regents were properly, constitutionally formed. Rather, any challenge to the qualifications of the Regents must be brought by the proper parties in a proceeding *quo warranto*. Regardless of whether the issue may be collaterally attacked, the Regents were *de facto* Regents and their actions are valid. The taking of the property for an athletic village was for a valid public purpose. The Regents did not act in bad faith in negotiating to purchase the landowner's property. Accordingly, the trial court is affirmed, but because both parties demanded a jury trial on the issue of sufficiency of compensation, the cause is remanded for a jury trial.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS VACATED; TRIAL COURT AFFIRMED AND CAUSE REMANDED TO PROCEED TO JURY TRIAL ON THE ISSUE OF COMPENSATION.**

EDMONDSON, C.J., HARGRAVE, OPALA, KAUGER, WINCHESTER, REIF, JJ., SUMMERS, S.J., concur.

COLBERT, J., concurs in result.

WATT, J., dissenting.

I dissent from the majority opinion which reaches the same result as did the Court of Civil Appeals. My dissent is consistent with my original vote to deny certiorari. Rather than issuing an opinion from this Court on the facts presented, I would vote to deny certiorari and order that the Court of Civil Appeals' opinion be ordered for publication by this Court and anointed with precedential value.

TAYLOR, V.C.J., recused.